**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JESUS COLON                              :          CIVIL ACTION
                                         :
          v.                             :
                                         :
JO ANNE BARNHART,                        :          NO. 05-1541


**Baylson, J.**                                              **March 24, 2006**

<u>**MEMORANDUM**</u>

Plaintiff Jesus Colon ("Plaintiff" or "Colon") seeks judicial review of the decision of the

Commissioner of the Social Security Administration denying his claim for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C.

§§ 1381–1383f.  Presently before the Court are the parties' cross-motions for summary judgment

(Doc. Nos. 8 and 9).

**I. <u>Background</u>**

    **A.  <u>General Background and Procedural History</u>**

Plaintiff initially filed applications for Social Security Disability Insurance Benefits (DIB)

and SSI on March 15, 1995.  (R. at 47–50, 61–63).  Plaintiff appealed initial denials to an

Administrative Law Judge ("ALJ") on September 19, 1995, (R. at 73–76), but he did not appear

for a scheduled hearing and the ALJ issued an Order of Dismissal on November 19, 1997.  (R. at

265–66).  Plaintiff subsequently obtained counsel and requested review of the dismissal by the

Appeals Council of the Social Security Administration ("the Appeals Council"), and on October

1, 1998, that body granted the request, vacating the Order of Dismissal and remanding the case

1

for a hearing on the merits.  (R. at 267–73).

After a hearing before a different ALJ on March 15, 1999, the Plaintiff received an unfavorable hearing decision dated March 26, 1999.  (R. at 325–42).  Plaintiff again requested review, and on February 22, 2002, the Appeals Council issued an order affirming the ALJ's decision concerning the denial of DIB benefits but vacating the decision as it pertained to Plaintiff's SSI disability claim.  (R. at 343–46).  On remand, the ALJ held two separate hearings. The first, on August 12, 2002, consisted of testimony from Medical Expert ("ME") Dr. Margaret Friel, (R. at 685–706), and the second, on January 30, 2003, included testimony from the Plaintiff, another ME, Dr. Richard Saul, and a Vocational Expert ("VE"), Dr. Steve Gummerman.  (R. at 707–38).

On February 26, 2003, the ALJ issued a hearing decision denying Plaintiff's disability claim.  (R. at 21–34).  Plaintiff again requested Appeals Council Review, and on February 3, 2005, that request was denied.  (R. at 8–11).  The ALJ's decision therefore constitutes the "final decision of the Commissioner of Social Security" and Plaintiff has commenced this action pursuant to 42 U.S.C. §§ 405(g), 1383(c) and moves for summary judgment under F.R. Civ. P. 56.  Plaintiff seeks a determination from this Court that he has been "disabled," as defined under the Act, since March 15, 1995.

**B.  History of Treatment for Physical and Mental Impairments**

Plaintiff is currently fifty-five years old and has been in the United States since he was nineteen.  He has not worked since 1993 or 1994, and before he stopped working, he was a furniture deliveryman for nine years.  (R. at 28).  He testified before the ALJ on January 30, 2003 and stated that he has been unable to work because of pain in his back and chest.  Id.  Plaintiff

also noted that he is also unable to work due to his mental state, as he does not like to deal with people, does not feel "well" when he is out on the streets, and becomes angry for no apparent reason. (R. at 28–29). Plaintiff testified that he has troubles with his nerves and that "sometimes" he worries and people make him nervous. (R. at 26). He also stated that he occasionally wakes up feeling sad and then does not want to go outside. For this reason, he stays in once or twice a week. Id. Plaintiff stated that he misses his family and is sad because he is separated from them. Id.

The ALJ's report contains an extensive review of Plaintiff's treatment records for both physical and mental impairments. Because Plaintiff has not challenged any of the ALJ's findings regarding physical impairments, the Court need not summarize medical evidence regarding the Plaintiff's physical condition. See Def's Br. at 3; Pl's Resp. at 3. As for the Plaintiff's mental health, there are extensive medical records both from treating physicians and psychologists as well as medical experts engaged for purposes of this social security claim.

Plaintiff's medical records were reviewed by state agency non-examining psychological consultants in the summer of 1995. The findings from this review were summarized on the Psychiatric Review Technique Form ("PRTF") and it was noted that Plaintiff "often" had deficiencies in concentration, persistence, or pace. (R. at 90). The initial review was performed by Thomas E. Fink, Ph.D. on June 16, 1995, and his findings were subsequently affirmed by Paul Perch, Ed.D. on August 30, 1995. (R. at 83).

A consultative psychiatric examiner, Dr. Harry Eisner, examined Plaintiff on June 8, 1995 and diagnosed him with major depression. (R. at 182–88). Dr. Eisner noted that Plaintiff's prognosis was "fair to poor" and that " if he doesn't get more medication and help, it is expected

3

that he will get worse." (R. at 184).

Dr. William Clovis, an ME who testified during a hearing before an ALJ on March 15, 1999, opined that Plaintiff suffered both from anxiety and depression and that Plaintiff met the requirements for both the A and B listings of both 12.04 and 12.06.[1] (R at 681–82). As to the B listings, Dr. Clovis stated that Plaintiff did not have restrictions in daily living but had "marked" difficulties in maintaining social functioning, "frequent" difficulties in concentration, and "repeated" episodes in work-like settings. (R. at 682).

On December 17, 2001, Plaintiff underwent a clinical psychological disability evaluation by Stephen Rosenfield, M.A. (R. at 554–60). Mr. Rosenfield diagnosed Plaintiff as suffering from adjustment disorder with anxiety but noted that the prognosis was generally good with "continued mental health contact." (R. at 557). In regard to Plaintiff's concentration, persistence, or pace, Mr. Rosenfield concluded that Plaintiff's "ability to complete assignments and/or to sustain work or work-like related activities would appear to be somewhat capable at this time but might need a medical determination in that regard." (R. at 558). Despite the fact

---

[1]  The so-called "listings of impairments," found at 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00 et seq. (1999), are considered by the ALJ at step three of the sequential evaluation of disability. If the claimant's impairment meets the criteria of a listed impairment then there is a presumption of disability. The requirements of Listing 12.04 are:

> (A) medically documented persistence, either continuous or intermittent, of one of the following: (1) depressive syndrome; or (2) manic syndrome; or (3) bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive symptoms (and currently characterized by either or both syndromes); and (B) resulting in at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1. The various requirements under the mental impairment listings are thus referred to colloquially as "A listings" and "B listings" based on the applicable subheading.

that his report essentially concluded that Plaintiff could perform activities of daily living on a sustained basis and that his mental condition did not appear to have affected his ability to maintain a daily household routine, id., Rosenfield listed Plaintiff's ability to make occupational adjustments as "fair" across all categories, listed his ability to make performance adjustments as "poor" in two out of three categories, and listed his ability to make personal-social adjustments as "fair" in all four categories.  (R. at 559–60).

Psychiatrist Dr. Margaret Friel appeared at the August 12, 2002 hearing before the ALJ and testified that based upon the records she reviewed, Plaintiff "has a 'slight' restriction of activities of daily living, has 'moderate' difficulties in maintaining social functioning, and has no episodes of decompensation."  (R. at 28, 700–01).  In addition, Dr. Friel noted that there was insufficient evidence to determine whether Plaintiff "had a 'marked' limitation in maintaining concentration, persistence, or pace."  (R. at 701).  Dr. Friel was careful to point out that a lack of documentation from Plaintiff's treating psychiatrist prevented more definitive determinations, as it was entirely possible that Mr. Rosenfield could have seen Plaintiff on a particular day when he was "functioning pretty well."  (R. at 700).  Dr. Friel pointed out that a treating psychiatrist "might see [Plaintiff] as more limited because of . . . ongoing knowledge of the longitudinal effects of depression and anxiety."  Id.

During the January 30, 2003 hearing, Dr. Richard Saul, another ME, testified that though the Plaintiff has no psychosis, he is manipulative, has a personality disorder, and suffers from a major depressive disorder and an anxiety disorder.  (R. at 29, 714).  Applying these diagnoses to the "A" listings of the mental health listings, Dr. Saul opined that the depressive disorder qualifies as a 12.04 affective disorder and the anxiety disorder meets the requirements of a 12.06

anxiety-related disorder.  Dr. Saul also noted that Plaintiff has a "pathologically inappropriate suspiciousness or hostility" because he feels that he is generally not getting what he deserves in life.  As for the "B" criteria of the mental health listings, Dr. Saul testified that Plaintiff had mild restrictions of activities of daily living, moderate difficulty in maintaining social functioning, and moderate difficulty with maintaining concentration, persistence, and pace. (R. at 714).

When asked to comment on the ratings given to Plaintiff by Steven Rosenfield, a consultative examiner, Dr. Saul stated that he "more or less" agreed with Rosenfield's analysis and that the ratings were "not unreasonable."  (R. at 29, 719).  Considering the "fair" abilities which Rosenfield noted in his assessment of all almost all areas of occupational and personal-social adjustments, Dr. Saul was asked whether Plaintiff would be able to function at job for forty hours a week.  Dr. Saul opined that he could.  (R. at 719).

The ALJ also recounted the Plaintiff's performance on the Global Assessment of Functioning test ("GAF"), which measures an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness on a scale of one to a hundred.[2]  The ALJ listed Plaintiff's GAF scores as 65 and 60; no other results were included in the report.[3]

_____

[2]  See American Psychiatric Association, Diagnostic and Statistical Manual 32 (4th ed. 2000) (hereinafter "DSM-IV").

[3]  A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 34.  A score of 50 is on the borderline between serious and moderate symptoms.  GAF scores between 51 and 60 indicate moderate symptoms (e.g., circumstantial speech and occasional panic attacks or moderate difficulty in social or occupational functioning as evidenced by new friends conflicts with peers or coworkers).  Id.  A score of 60 is on the borderline between moderate and mild symptoms.  A score of 61–70 is indicative of "some mild symptoms" (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty

Finally, the ALJ considered the opinion of VE Dr. Steven Gummerman, who testified at the January 30, 2003 hearing. Dr. Gummerman indicated that considering the ALJ's hypothetical characterization of an individual who could perform a full range of medium exertional work but had certain non-exertional limitations, there were jobs available on a national and regional level for such an individual. (R. at 734). According to Dr. Gummerman, his opinions were consistent with the Dictionary of Occupational Titles. Id. The VE was subsequently asked by the Plaintiff's attorney to assess the significance of the fact that Mr. Rosenfield, in the RFC, had checked every category as "fair" on the portion of the form regarding Plaintiff's ability to make "occupational adjustments." (R. at 559, 735–36). Dr. Gummerman responded by noting that:

> Cumulatively, it would make it difficult to sustain full-time [substantial gainful activity]. And the reason I say this is because — primarily because of the reliability factor, using judgment, following work rules, maintaining attention and concentration. That's — every category of fair is checked and I think cumulatively that would make it difficult to sustain work.

(R. at 736). Dr. Gummerman testified that several jobs, including various driver positions and work as a packer, were available both in the regional and national economies. (R. at 732–34).

## II. **Parties' Contentions**

The Plaintiff argues that the ALJ's mental RFC assessment is not supported by substantial evidence since it mischaracterizes the record, weighs evidence improperly, and ignores probative evidence. Plaintiff contends that the ALJ erred by giving no weight to the opinion of a state agency reviewing psychologist that due to major depression, Plaintiff would "often" experience deficiencies of concentration, persistence, or pace, resulting in failure to

---

well, has some meaningful interpersonal relationships. Id. The ALJ's report included a description of the mild symptom category only. (R. at 26).

complete tasks in a timely manner.  Plaintiff asserts that the psychologist's finding should have

been, but was not, incorporated into the hypothetical question presented to the VE and that the

ALJ's decision is therefore not supported by substantial evidence.  Finally, Plaintiff argues that

the ALJ's rejection of the findings and opinions of treating, examining, and non-examining

"medical" sources is not supported by substantial evidence.  Plaintiff contends that the opinions

of two psychiatrists and the results of two scores from Global Assessments of Functioning were

discounted without sufficient explanation from the ALJ.

The Commissioner counters that substantial evidence supports the ALJ's finding that the

Plaintiff was not disabled.  The Commissioner asserts that there was conflicting evidence in this

case and the ALJ was in no way required to adopt the assessment of mental functioning set forth

by Plaintiff.  As to the PRTF issued by the state agency, Defendant maintains that the ALJ's

hypothetical clearly accounted for all of Plaintiff's impairments, including any deficiency

regarding concentration, persistence, or pace.  Defendant also contends that the psychiatric

assessments of Drs. Eisner and Clovis (and the work limitations which Plaintiff believes are

supported therein) were sufficiently rebutted by the testimony of Drs. Friel and Saul.  Moreover,

the Commissioner argues that the GAF scores assessed by the treating sources showed only

moderate to mild symptomatology, and it was entirely reasonable to accord more weight to the

assessments which contradicted a finding of disability.  Finally, the Commissioner notes that

much of the medical evidence in the record pertains to Plaintiff's physical condition, and because

there has been no challenge with respect to the ALJ's findings regarding physical impairments,

the ALJ's conclusion that Plaintiff is physically able to work should stand.

Plaintiff responded to the Commissioner's Motion for Summary Judgment arguing that

the Commissioner has improperly recharacterized the ALJ's decision in this case.  Plaintiff

contends that this Court should review the Commissioner's final decision as it was made and not

allow it to be augmented after the fact by supplying factual findings and legal justifications which

were not found in the ALJ's report.

### III.  Legal Standard

The Act provides for judicial review of any "final decision of the Commissioner of Social

Security" in a disability proceeding.  42 U.S.C. § 405(g).  The district court may enter a judgment

"affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or

without remanding the cause for a rehearing."  Id.  The standard of review of an ALJ's decision

is plenary for all legal issues.  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d

Cir. 1999).  The Court must review the record to determine whether substantial evidence

supports the ALJ's decision.  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The

factual findings of the ALJ are accepted as conclusive, provided they are supported by substantial

evidence.  Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  The Court must not "weigh the

evidence or substitute [its own] conclusion for those of the fact-finder."  Rutherford, 339 F.3d at

552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)); see also Monsour Med.

Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986) (holding that where "an agency's fact finding

is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings").

"Substantial evidence has been defined as more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quotations

and citations omitted); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

IV. <u>Discussion</u>

To determine whether an individual is disabled, the regulations proscribe a five-step analysis.  20 C.F.R. § 404.1520(a); <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 550–51 (3d Cir. 2004).  The fact-finder must determine: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if the claimant has a "severe impairment," whether that impairment meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and thus are presumed to be severe enough to preclude gainful work; (4) whether the claimant can still perform work he or she has done in the past ("past relevant work") despite the severe impairment; and (5) if not, whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and RFC.  <u>Id.</u>  If there is an affirmative finding at any of steps one, two, four or five, the claimant will be found "not disabled."  20 C.F.R. § 404.1520(b)–(f); <u>see also</u> <u>Brown v. Yuckert</u>, 482 U.S. 137, 140–42 (1987).  The Plaintiff carries the initial burden of demonstrating by medical evidence that he or she is unable to return to his or her former occupation.  <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 406 (3d Cir. 1979).  Once the Plaintiff has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform.  <u>Id.</u>

At issue in this case is step five of the above analysis, as Plaintiff contends that he is unable to participate in substantial gainful employment and that the VE's conclusion to the contrary was based upon inaccurate assessments of his mental disabilities by the ALJ.  Plaintiff argues that the ALJ's mental RFC assessment was incorrect, since it is not supported by substantial evidence due to mischaracterization of the evidence of record, improper weighing of

the evidence, and ignorance of probative evidence.

**A.** **The ALJ Properly Incorporated into the Hypothetical the State Agency's Assessment of Plaintiff's Limitations Concerning Concentration, Persistence, or Pace**

Plaintiff objects to the ALJ's failure to place any weight on the 1995 state agency assessment and argues that the determination that he "often" had deficiencies in concentration, persistence, or pace was not incorporated into the ALJ's hypothetical. Pl's Br. at 7–9. The Third Circuit has held that an ALJ's hypothetical does not adequately capture and recite all of a claimant's mental impairments and the limitations caused by those impairments when a PRTF notes that claimant "often" suffered from deficiencies in concentration, persistence, or pace and that information is not included in the hypothetical. Ramirez, 372 F.3d at 555.

Here, however, the ALJ did sufficiently document Plaintiff's deficiencies, since the hypothetical presented by the ALJ at the January 30, 2003 hearing specifically mentioned "*moderate* limitations in maintaining concentration, persistence, or pace." (R. at 734 (emphasis added)). In determining that the hypothetical sufficiently represented Plaintiff's deficiencies regarding concentration, persistence, or pace, it is important to note that the mental impairment regulations were revised on August 21, 2000. See 65 Fed. Reg. 50746 (2000). Because the state agency assessment occurred in 1995 and the ALJ presented the hypothetical to the VE during a hearing in 2003, it is necessary to compare the measurements used by the Social Security Administration in evaluating functional limitations at each point in time. As of 2000, the broad functional area of concentration, persistence, or pace is evaluated under the same five-point "severity" scale used for activities of daily living and social functioning: none, mild, moderate, marked, and severe. Previously, concentration, persistence, or pace was evaluated on a

"frequency" continuum with "often" falling in the middle of the five-point scale: never, seldom, often, frequent, and constant.  A finding of "often" under the old scale therefore roughly equates to a "moderate" deficiency.  The ALJ's hypothetical, which specifically included the word "moderate" in describing Plaintiff's non-exertional limitations, does take account of the state agency assessment, albeit using the more modern terminology.  See Dynko v. Barnhart, 2004 WL 2622260, at *5 n.34 (E.D. Pa. Nov. 16, 2004) (holding that "'often' and 'moderate' fall on the same point on a five-point continuum, and therefore can be considered equivalent findings").

Thus, notwithstanding the fact that the report stated that it would receive "no weight," the significance of Plaintiff's deficiencies regarding concentration, persistence, or pace was adequately represented in the ALJ's hypothetical.  Plaintiff's objections concerning the assessments of the state agency are therefore denied.

**B.   The ALJ Improperly Weighed and Discounted the Record Evidence in Reaching His Conclusion that the Plaintiff Is Not Disabled**

In this case, the ALJ's conclusion turns on his finding that Plaintiff was not under a disability, as defined by the Act, at any time through the date of the report.  Plaintiff first objects to the ALJ's determinations due to his decision to place great weight on the opinions of Drs. Friel and Saul and place little or no weight on the opinions of Drs. Clovis and Eisner as well as Mr. Rosenfield.  Plaintiff contends that this weighing of the evidence was flawed, as the record did not support the conclusions of Drs. Friel and Saul.  Defendant argues, however, that the ALJ's report provided a careful review of the record and a detailed basis for the adoption of some medical testimony and evidence and the rejection of other medical testimony and evidence.

In his report, the ALJ ultimately placed greater weight on the opinions of Dr. Friel and

Saul and found that there was "no support for Dr. Clovis' opinion" and no support for marked difficulties in maintaining social functioning. (R. at 27–28). The Court appreciates the difficult task an ALJ faces in attempting to interpret years of medical records and to assess the content and credibility of live testimony during hearings. If the matter at hand only turned upon the weighing of relevant medical opinions, the ALJ's decision to deny SSI insurance would most likely stand, since the report appeared to sufficiently explain the reasons for adopting the opinions of Drs. Friel and Saul and reject the various opinions supporting a finding of disability in this case. That said, the Plaintiff's motion for summary judgment focuses on more than just the ALJ's adoption of particular medical testimony. Plaintiff also objects to the characterization and presentation of the Plaintiff's GAF scores, and it is this component of the record to which the Court will now turn its focus.

Pursuant to final rules of the Social Security Administration, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." 66 Fed. Reg. 50746, 50764–65 (2000). However, the rules still note that the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." Id. As such, it constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability. Although the ALJ "may properly accept some parts of the medical evidence and reject other parts . . . he must consider all the evidence and give some reason for discounting the evidence he rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).

In her summary judgment brief, Defendant acknowledges that in two visits in November of 2001 and February of 2002, a psychiatrist had suggested a GAF score of 50 for the Plaintiff.

(R. at 606–07).  Defendant notes that in two subsequent exams in April and June of 2002 the

Plaintiff received scores of 55, (R. at 601, 608), and argues that Plaintiff's brief was merely an

attempt to "isolate some favorable evidence" and "ignore the vast body of contrary evidence."

Def's Br. at 11–12.  Plaintiff asserts that this Court must consider only the ALJ's report and the

evidence on which it was based and should not allow the augmentation of a final decision

through a party's later provision of factual findings or legal justifications.  Pl's Resp. at 1–2.

In Span ex rel. R.C. v. Barnhart, 2004 WL 1535768 (E.D. Pa. May 21, 2004), this Court

held that an ALJ's determination of a claimant's level of function was not supported by

substantial evidence because of the ALJ's failure to explain how he weighed and discounted the

significance of the claimant's GAF scores.  Id. at *9.  In Span, the ALJ relied upon the findings

of a particular doctor in concluding that claimant's condition did not meet the requirements to be

considered disabled under the law.  Id. at *7.  Ultimately, the Span court held that the "ALJ's

written opinion does not evidence that he seriously considered and weighed the importance of

these scores," and the case was remanded in order that the ALJ could clarify the basis for his

holding.  Id.

In Escardille v. Barnhart, 2003 WL 21499999 (E.D. pa. June 24, 2003), this Court also

addressed the significance of an ALJ's consideration of GAF scores in reaching a decision on a

claimant's disability status.  In Escardille, the ALJ failed to mention claimant's GAF score of 50,

and the district court concluded that the test score "constituted a specific medical finding" that

claimant was unable to perform competitive work.  Id. at *7.  The court thus remanded the case

for further consideration since there was no indication that significant probative evidence was not

credited or simply ignored.  Id. at **6–7 (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.

14

1981)).

Unlike in <u>Span</u>, where the ALJ simply listed the claimant's GAF scores and then adopted a doctor's determination that claimant was not impaired, this case is more akin to <u>Escardille</u>, where the ALJ's written opinion did not evidence that he seriously considered and weighed the importance of these scores.  The record in this case shows that Plaintiff received at least twelve GAF evaluations over a period of approximately six years.[4]  (R. at 601–08).  While Defendant is correct that Plaintiff's two results of 50 in November of 2001 and February of 2002 were followed by scores of 55 in April and June of 2002, this does not excuse the complete absence in the report of any discussion of Plaintiff's lowest scores.  The ALJ's report ignores district court and Third Circuit case law requiring discussion of the discounting of probative record evidence, specifically GAF scores.  The Court therefore finds that in light of Plaintiff's total GAF score history, the ALJ was required to discuss his reasons for not even considering the two GAF scores of 50, leading up to the disability determination in this case.

The ALJ's report in this case discusses only two of the twelve GAF scores set forth above.  The report reads as follows:

> The claimant's treating physicians rated his Global Assessment of Functioning . . . as 65 . . . and 60 . . . . A score of 61–70 is indicative of some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g. social truancy, or theft within household) but generally functioning pretty well, has some meaningful interpersonal relationships.  A score of 60 is on the borderline between moderate symptoms and mild symptoms.

---

[4]  A review of the record reveals the following GAF results for Plaintiff: June 1996, 65 (R. at 245, 249); March 1997, 65 (R. at 241); April 1997, 65 (R. at 237); February 2000, 55 (R. at 602); March 2000, 57 (R. at 603); June 2000, 55 (R. at 604); January 2001, 60 (R. at 605); April 2001, 60 (R. at 541); November 2001, 50 (R. at 606); February 2002, 50 (R. at 607); April 2002, 55 (R. at 601); and June 2002, 55 (R. at 608).

(R. at 26).  The description of the score range following the Plaintiff's results is relevant, as GAF scores are one part of the record evidence used in assessing whether an individual can perform a job in the national economy.[5]

Although the ALJ did provide an explanation regarding the evidence he relied upon, he did not disclose his reasons for discounting other evidence.  Span, 2004 WL 1535768 at *8 (citing Adorno, 40 F.3d at 48).  Defendant argues the GAF data supports a finding that the Plaintiff was not disabled and is, in fact, employable.  Specifically, Defendant notes the general trend of Plaintiff's GAF scores as well as the fact that the scores again rose after the two low scores in late 2001 and early 2002.  Def's Br. at 11–12.  This Court, however, is bound to consider the final decision of the Commissioner as it is written and cannot insert into it arguments presented after the act by interested parties.

When it comes to the hypothetical questions posed to vocational experts, the Third Circuit has held that "while the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments."  Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).  Testimony of a VE constitutes substantial evidence for purposes of judicial review only where

---

[5]  The reference to the "mild symptom" category is particularly relevant, as the GAF scores in those categories provided support for the ALJ's determination that Plaintiff is not disabled due to his mental impairment.  Examining the twelve separate GAF scores listed in footnote 4, supra, three scores fell within the "mild symptoms" range, seven scores fell within the "moderate symptoms" range, and two scores fell within the "serious symptoms" range.  Considering the wide range of scores which Plaintiff received over the six-year period, it is particularly troubling that the ALJ cited only two scores within the "mild" range in his report.

the hypothetical question posed by the ALJ fairly encompasses *all* of an individual's significant limitations that are supported by the record.  Ramirez, 372 F.3d at 552; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  When an ALJ incorporates a claimant's limitations into a hypothetical, "great specificity" is required.  Ramirez, 372 F.3d at 554–55 (citing Burns, 312 F.3d at 122).

Here, the ALJ's report provided a general description of the hypothetical.  The ALJ wrote that "[the VE] was . . . presented with a series of hypothetical facts about a hypothetical individual.  These facts were identical to the claimant's condition as it is set out in the evidence and set forth in this decision."  (R. at 32).  In the findings, the ALJ noted that "[t]he claimant has the residual functional capacity to perform a range of medium work," id., and, based on that determination as well as the other non-exertional limitations referenced in the report, the VE testified that the plaintiff could perform the jobs of driver, bus driver, taxi driver, stock clerk, and packer.[6]

The Court holds that based on the incomplete evaluation of the Plaintiff's GAF scores and the resulting failure to properly weigh the evidence before him, the ALJ's conclusion that the

---

[6]  A review of the hearing transcript indicates that the ALJ referenced Plaintiff's previous work as a truck driver, and asked the VE if there were "semi-skilled driving occupations at the medium exertional level."  Hr'g Tr. at 732 (Jan. 30, 2003).  The ALJ also provided the VE specific language regarding a non-exertional limitation for someone with Plaintiff's general limitations.  The hypothetical read as follows:

> Mild limitations in activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, or pace. Given those non-exertional limitations limited to the full range of medium exertional work, are there any unskilled occupations that such a claimant could perform in your opinion?

Id. at 734.

Plaintiff can engage in a limited range of medium work with certain non-exertional limitations is not based upon substantial evidence.  Since the medium work determination and the non-exertional limitations were made part of the hypothetical presented to the VE, the Court also holds that the hypothetical question posed by the ALJ does not fairly encompass all of the Plaintiff's significant limitations, and the VE's testimony cannot be considered for purposes of ascertaining disability for that reason.  Though the Court finds that the ALJ's report failed to properly explain a basis for discounting relevant evidence in the record, the Court does not necessarily conclude that Plaintiff is disabled under the Act.  The disability determination will be left to the ALJ on remand.

## V.  Conclusion

For the foregoing reasons, this Court concludes that though substantial evidence supports the ALJ's determination that Plaintiff's physical impairments do not constitute a disability under the Act, the same is not true for the ALJ's determination as to Plaintiff's mental impairments. Upon an independent and thorough consideration of the administrative record and all filings in this Court, the Court concludes that Plaintiff's Motion for Summary Judgment will be granted in part, and the case will be remanded to the Commissioner of the Social Security Administration on the basis that the ALJ's written opinion failed to properly indicate how the ALJ weighed and discounted certain record evidence, which is relevant to the issue of whether or not the ALJ's ultimate conclusion is supported by substantial evidence.[7]  Accordingly, the Commissioner's

---

[7]  The Court appreciates the long delay in the resolution of Plaintiff's Social Security claims. Though Plaintiff has requested a summary judgment order awarding SSI benefits forthwith, the Court does not believe that the failure of the ALJ to address the entire range of GAF scores necessarily indicates that there is substantial evidence on the record that the Plaintiff is disabled and entitled to benefits.  The Court must therefore remand the case for a new hearing in which the Plaintiff's GAF

Motion for Summary Judgment will be granted in part and denied in part.  Similarly, Plaintiff's

Motion for Summary Judgment will be granted in part and denied in part.  The case will be

remanded for further proceedings in accordance with this opinion.

       An appropriate Order follows.

---

scores are considered in weighing the evidence presented.  On remand, the ALJ should consider the
medical evidence concerning Plaintiff's mental impairments in light of the full range of GAF scores
documented over the years, including the two scores of 50 that fall within the range of "serious
symptoms."

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESUS COLON | : | |
| | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE BARNHART, | : | NO. 05-1541 |

### ORDER

AND NOW, this 24th day of March, 2006, after careful and independent consideration of the parties' Cross-Motions for Summary Judgment, and review of the record, it is hereby ORDERED that:

1.      The Commissioner's Motion for Summary Judgment (Doc. No. 9) is DENIED;

2.      The Plaintiff's Motion for Summary Judgment (Doc. No. 8) is GRANTED IN PART AND DENIED IN PART; and

3.      The case is REMANDED to the Commissioner for an evidentiary hearing in accordance with the foregoing Memorandum.  This remand is ORDERED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

4.      The Clerk shall mark this case as CLOSED.

BY THE COURT:

 s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\Richard\Colon v. Barnhart\Colon v. Barnhart, SJ Memo.wpd

20